**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00069-HBB**

**PATRICIA SUE HERNANDEZ**                                                                 **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security**                                                **DEFENDANT**

**MEMORANDUM, OPINION,
AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Patricia Sue Hernandez ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 13) and Defendant (DN 16) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10). By Order entered July 26, 2016, (DN 11), the parties were notified that oral arguments would not be held unless a written request was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income on July 24, 2012. (Tr. 313-17, 318-26). Plaintiff alleged that she became disabled on March 15, 2009 (Tr. 313, 318), as a result of Degenerative disc disease, osteoarthritis, scoliosis, back pain, neck pain, problems with left leg, numbness, tingling, poor reflex, insomnia, depression, anxiety, poor memory, focus, and concentration, very poor balance, joint pain, hands and arms (Tr. 371). Administrative Law Judge John R. Price ("ALJ") conducted a video hearing on August 15, 2014. The ALJ presided over the hearing remotely from Louisville, Kentucky, and Plaintiff was present in Bowling Green, Kentucky. Plaintiff was represented by Charles Dale Burchett. Also present and testifying was Sharon B. Lane, a vocational expert.

In a decision dated September 25, 2014, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 68-85). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 15, 2009, the alleged onset date (Tr. 73). At the second step, the ALJ determined that Plaintiff's major depressive disorder and minimal degenerative disc disease are "severe" impairments within the meaning of the regulations (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 74-75).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform light work, except she should have a sit/stand option in thirty minute intervals with a minute or two to change positions (Tr. 75). Additionally, the ALJ found that Plaintiff can stand and walk

for four hours in an eight hour day and sit for six (Id.). She can use a cane to walk, should not climb or crawl, but can stoop, kneel, and crouch occasionally (Id.). She should avoid concentrated humidity, vibrations, dust, gas, fumes, and other pulmonary irritants (Id.). She should avoid heights and dangerous machinery and cannot operate commercial driving equipment. Moreover, she should perform low stress work with no fast-paced production quotas. Her work should be simple, one or two step tasks that are non-detailed with little change in daily routine. Finally, she should have only superficial contact with others (Id.). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of her past relevant work as a security guard, waitress, cashier, machine operator, corrections officer, or baker (Tr. 79).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 80). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from March 15, 2009 through the date of the decision (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 65-67). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-7).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

> 5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step, concluding that Plaintiff can no longer perform any past relevant work, but finding that a significant number of jobs still exist given her age, education, work experience, and residual functional capacity (Tr. 79). Specifically, the ALJ found, based on testimony of the vocational expert, that Plaintiff could perform such representative occupations as a labeler/marker, sorter, or order caller (Tr. 80).

Plaintiff offers two arguments, both challenging the amount of weight the ALJ afforded the opinion of Dr. Steven A. House, M.D. First, Plaintiff contends Dr. House's opinion was entitled to controlling weight because it is well-supported by objective evidence in the record (DN 13 at 2-5). In the alternative, Plaintiff argues the ALJ failed to offer good reasons for his decision to afford Dr. House's opinion no weight (DN 13 at 5-6). For the reasons set out below, the judgment of the Commissioner is upheld.

The Sixth Circuit Court of Appeals has offered the following comprehensive guidance for courts reviewing an ALJ's decision regarding how much weight to afford a medical opinion.

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), 20 C.F.R. §§ 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), id. §§ 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become

> weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).
>
> The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, id., as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, id. § 404.1527(c)(2)-(6).
>
> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. Id. § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir.2004).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013).

In support of her argument that the ALJ did not meet these standards, Plaintiff contends Dr. House's February 6, 2013 residual functional capacity assessment (Tr. 460-61) is entitled to controlling weight (DN 13 at 2). In this report, Dr. House opined, among other limitations, that Plaintiff could stand or walk for no more than two to three hours per day, could sit for less than two hours per day, and walk for less than a half mile, all with a short break every two hours per day (Tr. 460-61). Plaintiff argues clinical findings support this restrictive assessment (DN 13 at

7

4-5). These include an office note from Dr. House from December 9, 2011 documenting paraspinal muscle spasms. Other notes indicate back spasms, tenderness, abnormal gait, and subjective allegations of pain by Plaintiff (Id. (citations omitted)). Plaintiff contends that, on the whole, these findings support Dr. House's assessment.

In addressing Plaintiff's first argument, the undersigned must determine whether, in light of Gayheart, the ALJ's decision not to afford controlling weight to Dr. House's opinion was supported by substantial evidence. 710 F.3d at 376. Here, the ALJ failed to address this requirement, and, as such, did not fully comport with applicable procedural regulations. The issue then becomes whether this failure constitutes harmless error. The Sixth Circuit has indicated it will not hesitate to remand when it encounters decisions from Administrative Law Judges that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion. Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011) (citations omitted). However, a violation of these procedural requirements can be deemed "harmless error" if one of the following requirements is satisfied:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation.

Cole, 661 F.3d at 940.

The ALJ noted that x-rays of Plaintiff's cervical, thoracic, and lumbar spine taken on January 28, 2013 (Tr. 424-26) revealed only mild degeneration and scoliosis throughout Plaintiff's spine, except her cervical spine, where there were moderate degenerative changes (Tr.

77). The ALJ further noted that CT scans taken that month show only mild degeneration throughout Plaintiff's spine, according to a neurologist's report from later that year (Tr. 77, 464). Plaintiff's July, 2013 emergency room visit revealed some degeneration of her cervical spine with mild bulging at C3 and C4 as well as no degeneration in the thoracic spine and mild defuse disc bulging at L4 and L5 with mild spinal stenosis and mild multilevel facet arthropathy (Tr. 77, 499).

One may infer from the ALJ's assigning no weight to Dr. House's opinion and noting that the minimal testing performed did not support the extensive deficits described by Dr. House that the ALJ concluded Dr. House's assessment was not well-supported by medically acceptable clinical and laboratory diagnostic techniques (Tr. 78). Thus, the ALJ's analysis captured the intention underlying the regulation. His decision not to give Dr. House's opinion controlling weight was well-supported by substantial evidence and permitted a meaningful review of his decision. *See* Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The undersigned concludes this procedural shortcoming amounts to harmless error.

Next, the undersigned must determine whether the ALJ's conclusion that Dr. House's restrictive assessment was entitled to no weight was supported by substantial evidence. The undersigned finds that it was, and that Dr. House's restrictive assessment was therefore not appropriate given the objective medical record. Plaintiff has identified very little evidence to contradict the ALJ's findings. Plaintiff discusses treatment notes indicating spinal spasms and tenderness (DN 13 at p. 4 (citing Tr. 44, 443, 452, 457, 506, 508)). But none of the records indicates anything other than tenderness, spasms, or an abnormal gait. However, the

undersigned concludes that the ALJ properly determined that these relatively mild physical symptoms are inconsistent with Dr. House's restrictive assessment.

The next matter is Plaintiff's contention that the ALJ did not offer good reasons for why he gave no weight to Dr. House's opinion. In addition to the analysis of the medical record discussed above, the ALJ discussed opinions of other physicians whose findings more accurately reflect the objective medical evidence. The ALJ gave some weight to the state agency's physical findings, which concluded Plaintiff was capable of light work (Tr. 78). The ALJ provided additional reasons based on Plaintiff's own testimony. Specifically, Plaintiff testified that she performs few daily living activities. But she also testified that she does the cleaning, shopping, and laundry (Tr. 78). She also spends time on the computer (Id.). The ALJ concluded that this testimony is inconsistent with Plaintiff's descriptions of her limitations and pain levels (Id.). All of these are good reasons, supported by the record, that offer meaningful review of the ALJ's decisions. *See* Gayheart, 710 F.3d at 376. Therefore, the undersigned concludes the ALJ's decision to afford Dr. House's opinion no weight as well as his reasons for doing so are supported by substantial evidence.

Finally, Plaintiff takes issue with the ALJ's conclusion at Finding No. 10. Plaintiff asserts the ALJ erred in asking the vocational expert a hypothetical question based on an improper residual functional capacity finding (DN 13 at P. 6). This is a challenge at step five of the sequential evaluation process. At the fifth step, the Commissioner has the burden of demonstrating there exist a significant number of jobs in the local, regional and national economies that the claimant can perform, given his or her residual functional capacity, age,

education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 416.920(a)(4)(v) and (g); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992).

Here, Plaintiff contends the ALJ's residual functional capacity should have incorporated the limitations from Dr. House's findings. But this argument is without merit because the undersigned has already determined that the ALJ's decision to give no weight to Dr. House's findings was supported by substantial evidence. Therefore, the ALJ need not have included Dr. House's findings when posing the hypothetical question to the vocational expert. As substantial evidence supports the factual underpinnings of the hypothetical questions posed to the vocational expert, and because the vocational expert was able to identify a significant number of jobs which plaintiff could perform, the ALJ met his burden. *See* Blacha v. Sec'y of Health & Human Servs., 823 F.2d 922, 928 (6th Cir. 1987).

## ORDER

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and judgment is granted for the Commissioner.

Copies:        Counsel